```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
```

JENNIFER CULP,

                Plaintiff,

vs.                                  Case No. 11-1267-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments.[1] The matter has been fully briefed by the parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

---

[1] Plaintiff had also initially filed an application for disability insurance benefits. Plaintiff was insured for disability insurance benefits through September 30, 2001 (R. at 11). However, she later amended her alleged onset date of disability to January 22, 2009 (R. at 9, 29). This resulted in a dismissal of her disability insurance claim (R. at 9, 29).

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

3

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).   At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On December 9, 2010, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 9-22).  Plaintiff alleges that she has been disabled since January 22, 2009 (R. at 9, 29). At step one, the ALJ found that plaintiff has not engaged in

4

substantial gainful activity since plaintiff's alleged onset date (R. at 11).  At step two, the ALJ found that plaintiff had the following severe impairments: right hand carpal tunnel syndrome status/post release, migraine headaches, diabetes with obesity and gastroesophageal reflux disorder (GERD) complicating management, and history of nerve decompression (R. at 12).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14).  After determining plaintiff's RFC (R. at 15-16), the ALJ determined at step four that plaintiff has no past relevant work (R. at 20).  At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 20-21).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III.  Are the ALJ's RFC findings supported by the evidence in this case, including the medical opinion evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why

5

the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  <u>See</u> <u>Southard v. Barnhart</u>, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. <u>Spicer v. Barnhart</u>, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  <u>Cruse v. U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  <u>Brown v. Commissioner of the Social Security Administration</u>, 245 F. Supp.2d 1175, 1187 (D. Kan.

2003).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

The ALJ found that plaintiff has the following RFC:

> ...claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), or lifting 10 pounds occasionally and frequently; standing at least 2 hours (and up to 3 or 4 total) in an 8-hour day, with normal breaks; sitting 6 hours in an 8 hour day, with normal breaks; never climbing ladders, ropes or scaffolds; avoiding concentrated exposure to noise, vibration, and dust and fumes; and with handling and fingering limited to (i) frequently, or (ii) occasionally, with position alternation permitted every 30 to 45 minutes.

(R. at 15-16).

In the record, Dr. Jain, plaintiff's treating physician, stated the following on November 10, 2008:

> The patient is encouraged to start walking on a daily basis at least for thirty minutes which might turn out to be very beneficial for her...**She is asking whether she can go back to work or not.  In my opinion she should go back to work and not stay home because of the headaches or muscle spasms.  A follow up with me in three months is suggested.**

(R. at 345, emphasis added).  The ALJ accorded controlling weight to the opinion of Dr. Jain that plaintiff could work despite headaches and lower extremity pain, noting that his opinion is supported by the objective evidence (R. at 19).  The court finds no error in the ALJ's determination to give controlling weight to the opinion of Dr. Jain that plaintiff could work.  Plaintiff

9

does not cite to any medical opinion evidence stating that plaintiff is not able to work.[2]

The record also contains two state agency physical RFC assessments. The first one, prepared on June 2, 2009 (R. at 635-642), was affirmed by Dr. Stern on October 22, 2009 (R. at 695). This assessment limits plaintiff to sedentary work, with some postural, manipulative and environmental limitations (R. at 636-639). The second one, prepared by Dr. Siemsen, and dated December 4, 2009, contains similar limitations (R. at 697-704). The ALJ accorded partial weight to these medical opinions (R. at 19).

The ALJ provided the following explanation for his RFC findings:

> The undersigned concurs that the claimant is limited to lifting no more than 10 pounds as a result of diabetes, abdominal pain, obesity, carpal tunnel syndrome, and her history of lower extremity nerve surgery and is able to sit up to 6 hours of an 8-hour workday. However, due to the remoteness of lower extremity surgery and as indicated by her past work and her daily activities, the claimant is able to stand 3 to 4 total hours in an 8-hour workday. Giving some credibility to her testimony of lower

---

[2] Although plaintiff points out that this opinion by Dr. Jain precedes the onset date by two months, a medical opinion regarding disability that predates by a few months the alleged onset date of disability should nonetheless be considered by the ALJ. Lackey v. Barnhart, 127 Fed. Appx. 455, 458 (10th Cir. April 5, 2005); Hamlin v. Barnhart, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004). The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).

> extremity numbness and pain, she should be
> allowed to change positions every 30 to 45
> minutes. This is supported by the opinion of
> Dr. Jain recommending increased exercise for
> the claimant and walking for 30 minutes at a
> time (exhibit 1F/5). She should avoid ladder,
> rope, and scaffold climbing due to obesity,
> carpal tunnel syndrome, diabetes, and her
> history of lower extremity surgery. There is
> no evidence that the claimant has any
> problems with stair and ramp climbing,
> balancing, kneeling, stooping, crouching, and
> crawling. She should avoid concentrated
> exposure to noise, vibration, and dust and
> fumes in order not to exacerbate headaches.
> During the consultative medical evaluation,
> the claimant had positive Tinel's and
> Phalen's signs, but preserved grip strength
> and dexterity (exhibit 9F). She should be
> able to frequently handle and finger. She has
> no limitations in mental functioning.

(R. at 20).

The limitation of plaintiff to sedentary work and the prohibition on climbing ladders, ropes or scaffolds matches the assessments by Dr. Stern and Dr. Siemsen. Plaintiff takes issue with the fact that the ALJ's RFC findings diverge from the medical opinions on various other points.

First, the ALJ included in his RFC findings that plaintiff be allowed to alternate position every 30 to 45 minutes. Plaintiff argues that the medical opinions do not support this limitation. This limitation is not specifically mentioned in any of the medical opinion evidence. The ALJ stated that he included this limitation because he gave some credibility to her testimony of lower extremity numbness and pain (R. at 20). As the ALJ

11

noted, plaintiff testified that she could stand for about 30 minutes at a time (R. at 16, 48); plaintiff also testified that she could walk around for 45 minutes before needing to sit down (R. at 47).  Plaintiff further testified that she could be on her feet for a total of 3-4 hours (R. at 16, 48).  Plaintiff also stated that she drove one hour to the hearing, although she had to get out and stretch her legs (R. at 17, 38).  Thus, the findings of the ALJ appear to be in accord with plaintiff's testimony.  The ALJ also relied on the fact that Dr. Jain had indicated that plaintiff should walk on a daily basis for at least 30 minutes (R. at 20, 345).

The court finds no error in the ALJ's decision to include a limitation to alternate positions every 30 to 45 minutes based on the weight the ALJ accorded to plaintiff's testimony and the opinion of Dr. Jain, especially when any additional limitation works to plaintiff's benefit.  See Mounts v. Astrue, 2012 WL 1609056 at *8 n.2 (10th Cir. May 9, 2012)(Claimant complained that there was no evidence to support limitation imposed by ALJ; court held that because this additional limitation worked to claimant's benefit, the court declined to address the argument).  Furthermore, there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.  Chapo v. Astrue, __ F.3d ___, 2012 WL 2384354 at *2 (10th Cir. June 26,

2012).

Second, the ALJ limited plaintiff to handling and fingering (i) frequently, or (ii) occasionally, with position alternation every 30 to 45 minutes (R. at 16). This limitation was included in the hypothetical question to the vocational expert (VE) (R. at 330). Plaintiff argues that the medical opinions do not support the finding of the ALJ that plaintiff can handle and finger on a frequent basis.

In his assessment, Dr. Stern found that plaintiff is limited in her ability to handle, finger and feel. The assessment he affirmed states as follows:

> No rapid repetitive movement to R hand only due to carpal tunnel. Grasping and gripping are limited to occasional for same MDI [medically determinable impairment].
>
> LUE [left upper extremity] is normal and not limited.

(R. at 638). In his assessment, Dr. Siemsen found that plaintiff is only limited in fingering. He stated as follows:

> Above is limited due to clmt's hx of R handed carpal tunnel. Clmt is limited to no rapid repetitive movement w/ the R hand.

(R. at 700). Both doctors limited plaintiff to no rapid repetitive movement with the right hand; only Dr. Stern found that grasping and gripping were limited to occasional for the right hand.

According to the <u>Selected Characteristics of Occupations</u>

Defined in the Revised Dictionary of Occupational Titles (SCO) (U.S. Dept. of Labor, 1993 at C-3), "occasionally" involves an activity existing up to 1/3 of the time, "frequently" involves an activity existing from 1/3 to 2/3 of the time, and "constantly" involves an activity or condition that exists 2/3 or more of the time.  In another case, "repetitive" was found to mean the same thing as "constant," or 2/3 or more of the time.  Gallegos v. Barnhart, 99 Fed. Appx. 222, 224 (10th Cir. June 2, 2004).  Thus, the ALJ could reasonably conclude that the limitation by Dr. Stern and Dr. Siemsen of no rapid repetitive movement with the right hand would not preclude frequent handling and fingering.

    Dr. Stern further limited plaintiff to only occasional grasping and gripping; this limitation was not included in Dr. Siemsen's assessment.  This could explain the alternative RFC finding by the ALJ that plaintiff's handling and fingering was limited to either frequently or occasionally.  The ALJ included the alternate limitations in handling and fingering in the hypothetical question to the VE.  The VE identified five jobs that plaintiff could perform if limited to frequent handling and fingering, and identified two other jobs that plaintiff could perform if limited to occasional handling and fingering (R. at 330).  In his decision, the ALJ listed only those jobs that could be performed if plaintiff could frequently handle and finger (R. at 21).  However, the undisputed evidence from the VE also

14

identifies two jobs that plaintiff could perform if plaintiff was limited to occasional handling and fingering.

Of the two jobs identified by the VE as jobs that plaintiff could perform if limited to occasional handling and fingering, the VE indicated that 175,500 of these jobs exist in the national economy (R. at 330). The proper focus generally must be on jobs in the national, not regional, economy. The Commissioner is not required to show that job opportunities exist within the local area. Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009). In the case of Stokes v. Astrue, 274 Fed. Appx. 675, 684 (10th Cir. Apr. 18, 2008), the court noted that the remaining two jobs identified that the claimant could perform had 152,000 positions available nationally. The court held that they did not believe that any reasonable factfinder could have determined that suitable jobs did not exist in significant numbers that plaintiff could perform. For this reason, the court finds that even if plaintiff is limited to occasional handling and fingering, no reasonable factfinder could have determined that suitable jobs did not exist in significant numbers that plaintiff could perform. For these reasons, the court finds no error by the VE for including in his RFC findings the limitation to handling and fingering to either frequently or occasionally.

Third, plaintiff takes issue with the fact that the ALJ did not include occasional postural limitations of climbing ramps or

stairs, balancing, stooping, kneeling, crouching and crawling in his RFC findings.  The ALJ stated that there is no evidence that plaintiff has any problems in these areas (R. at 20).  However, both Dr. Stern and Dr. Siemsen found that plaintiff could only occasionally perform these postural activities (R. at 637, 699).  Both of them noted that the consultative physical examination by Dr. Henderson on April 18, 2009 found that plaintiff had mild to moderate difficulty with orthopedic maneuvers and diminished sensation in the legs (R. at 560, 642, 704).  Thus, contrary to the ALJ's finding, there is in fact evidence to support occasional postural limitations for the plaintiff in these areas.

The question is whether this error by the ALJ warrants a remand of this case for further hearing.  Courts should apply the harmless error analysis cautiously in the administrative review setting.  <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  <u>Fischer-Ross</u>, 431 F.3d at 733-734; <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004).

As defendant points out in his brief, SSR 96-9p states the

following:

> Postural limitations or restrictions related
> to such activities as climbing ladders,
> ropes, or scaffolds, balancing, kneeling,
> crouching or crawling would not usually erode
> the occupational base for a full range of
> sedentary work significantly because those
> activities are not usually required in
> sedentary work...
>
> An ability to stoop occasionally; i.e., from
> very little up to one-third of the time, is
> required in most unskilled sedentary
> occupations.

1996 WL 374815 at *7,8. Plaintiff does not respond in her reply brief to defendant's citation to SSR 96-9p. SSR 96-9p indicates that even had the ALJ included these occasional postural limitations, it would not have eroded the occupational base for sedentary work. On these facts, the court finds that the ALJ's failure to include the postural limitations contained in the two medical assessments was harmless error.

**IV. Did the ALJ err by not obtaining additional medical evidence regarding plaintiff's physical limitations from her carpal tunnel syndrome?**

As plaintiff notes, the ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. SSR 96-8p, 1996 WL 374184 at *5. The question is whether the ALJ should have obtained additional medical evidence regarding plaintiff's limitations from her carpal tunnel syndrome.

17

The ALJ considered the medical assessments by Dr. Stern and Dr. Siemsen, who offered opinions regarding plaintiff's limitations due to her carpal tunnel syndrome (R. at 19, 638, 700). As noted above, the ALJ's RFC findings regarding plaintiff's handling and fingering limitations were consistent with the opinions of the two physicians. The court finds no reasonable basis on the facts of this case for requiring the ALJ to seek additional medical opinions regarding plaintiff's limitations from her carpal tunnel syndrome.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 14th day of August, 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge